IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02834-RBJ-CBS

DEBORAH WITT,

        Plaintiff,

v.

GC SERVICES LIMITED PARTNERSHIP, a Delaware Limited Partnership,

        Defendant.

---

## ORDER ON PENDING DISCOVERY MOTIONS

---

Magistrate Judge Shaffer

      Civil discovery in the federal courts should, presumptively, be "a self-managed process." *See Federal Deposit Insurance Corp. v. Bowden*, No. CV413-245, 2014 WL 2548137, at *12 (S.D. Ga. June 6, 2014) (quoting *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274, at *4 (M.D. Fl. Oct. 25, 2013). *Cf. Selectica, Inc. v. Novatus, Inc.*, No. 6:13-cv-1708-Orl-36TBS, 2014 WL 1930426, at *2 (M.D. Fla. May 14, 2014) ("Discovery is intended to be extrajudicial and self-executing.  It should require, at most, infrequent court involvement."). The Federal Rules of Civil Procedure are premised on the notion that "reasonable lawyers can cooperate to manage discovery without the need for judicial intervention." *See* Fed. R. Civ. P. 26(b)(1), advisory committee notes (2000).[1]  The Civil Rules

---

[1]The Judicial Conference Committee on Rules of Practice and Procedure has recommended that Fed. R. Civ. P. 1 be amended to provide that the Federal Rules of Civil Procedure "be construed, administered *and employed* by the court and *the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding."  *See* Rules

Advisory Committee has warned, however, that "[i]f primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obligated to act responsibly and avoid abuse." *See* Fed. R. Civ. P. 26(g), Advisory Committee's Note (1983). *Cf. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 600 (2010) ("[A]n attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and the standards of professional conduct.") (quoting *Nix v. Whiteside*, 475 U.S. 157, 168 (1986)).[2] *See also Gipson v. Southwestern Bell Telephone Co.*, No. 08-2017-EFM-DJW, 2009 WL 790203 (D. Kan. Mar. 24, 2009) (recognizing that "counsel's obligations to act as advocates for their clients and to use the discovery process for the fullest benefit of their clients . . . must be balanced against counsel's duty not to abuse legal procedure"). This case illustrates what can happen when counsel lose sight of their professional obligations and the real interests of their clients.

The docket sheet in this case shows as pending Plaintiff Deborah Witt's Motion to Compel the Defendant's Response to the Plaintiff's Written Discovery Requests (doc. #22), as well as Defendant GC Services Limited Partnership's (hereinafter "GC Services") Motion to Compel Plaintiff's Discovery Responses & Motion for Sanctions (doc. #50) and Defendant's Second Amended Motion to Compel Plaintiff's Discovery Responses & Motion for Sanctions

---

Appendix B-13, http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014.pdf (emphasis added). The Advisory Committee's corresponding note acknowledges that "[e]ffective advocacy is consistent with – and indeed depends upon – cooperative and proportional use of procedure." *Id.*

[2]*See, e.g.,* Rule 3.4, Colorado Rules of Professional Conduct (a lawyer shall not "in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party").

(doc. #54).[3]  This court has reviewed the pending motions, related briefs and attached exhibits, the applicable law and the entire case file, and is sufficiently advised in the premises.  For the following reasons, the court will grant in part and deny in part Plaintiff's Motion to Compel, and deny without prejudice Defendant's Second Amended Motion to Compel and Motion for Sanctions.

## PROCEDURAL BACKGROUND

While the court will not burden the reader with an exhaustive recitation of the procedural history of this case, some facts are necessary to place the pending motions in context.  Ms. Witt commenced this litigation on October 17, 2013 with the filing of her Complaint (doc. #1).  That pleading asserted a single "violation of the [Fair Debt Collections Procedures Act] [15 U.S.C.] § 1692e preface, e(2)(A), e(8), e(10) and § 1962f preface."  *See* Complaint, at ¶75.  More specifically, Ms. Witt contends that during a telephone conversation on March 21, 2013 she "notified" or "informed" a GC Services representative that she was disputing her account with Sprint that had been transferred to Defendant for collection.  The Complaint further alleges that during the March 21, 2013 telephone conversation, a GC Services employee falsely "represented to the Plaintiff that the Account will stay on the credit bureau reports until it is paid."  *Id.* at ¶¶33 and 34.  Ms. Witt claims that

---

[3]Defendant appears to have mis-cast its September 5, 2014 filing as a "Second Amended Motion to Compel."  I will presume that the September 5th motion relates to the original Motion to Compel filed the preceding day and more properly should be described as a "First Amended Motion to Compel."  The docket sheet in this case indicates that on September 8, 2014, this court denied as moot Defendant's original Motion to Compel in light of the amended Motion filed on September 5, 2014.  *See* Doc. #56.  Therefore, the original Motion to Compel Plaintiff's Discovery Responses & Motion for Sanctions (doc. #50) should not appear on the docket as a pending motion.

> [a]fter March 21, 2013 when the Defendant communicated information about the Account, including the account balance on the Account and original creditor name on the Account, to Experian, Equifax and/or Transunion the Defendant did not communicate to Experian, Equifax and/or Transunion that the Account was disputed.

*Id.* at ¶49. Although Ms. Witt's Complaint did not allege actual damages caused by GC Services' conduct, the Fed. R. Civ. P. 16 scheduling order filed with the Court on December 18, 2013 indicated that Plaintiff was seeking "statutory damages" and "non-economic actual damages" against the Defendant, together with "her costs and reasonable attorney's fees pursuant to the FDCPA."[4]

GC Services filed its Original Answer, Affirmative Defenses and Jury Demand (doc. #6) on November 12, 203.  In its Answer, Defendant admitted that "Plaintiff and Defendant's employees had a telephone conversation regarding Plaintiff's defaulted Sprint account in 2013" and acknowledged that Defendant has "an audio recording of a telephone conversation with the Plaintiff."  *See* Answer, at ¶¶12 and 13.  However, Defendant denies that Plaintiff notified GC Services that she was disputing her account, denies that Defendant's employee made false representations to Ms. Witt, and denies that it failed to communicate to Experian, Equifax, and/or Transunion that Ms. Witt's account was disputed.  GC Services specifically asserted as an

---

[4]On July 30, 2014, Ms. Witt filed a Notice of Waiver of Her Claim for Actual Damages Pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(1) (doc. #42).  In light of that waiver, if Ms. Witt prevails in this action, she could recover statutory damages "not exceeding $1,000."  *See* 15 U.S.C. § 1692k(a)(2).  *Cf. Hedge v. Dynamic Recovery Services, Inc.*, No. 12-cv-01208-RM-BNB, 2014 WL 1016812, at *3 (D. Colo. Mar. 14, 2014) ("All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling.") (quoting *Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *4 (D. Colo. May 24, 2013).  If a prevailing party, Plaintiff also could recover "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).

affirmative defense that "[a]ny violation, if one occurred, was not intentional, was a bona fide error, and occurred, if at all, despite the maintenance of procedures reasonably adapted to avoid any such error," citing 15 U.S.C. § 1692k©.

Thus, as framed by the Complaint and Answer, the factual disputes in this case primarily revolve around (1) what was actually said by Ms. Witt and the GS Services representative during the telephone conversation on March 21, 2013;[5] (2) whether, given the substance of that conversation, GC Services had reason to and ever put Experian, Equifax or Transunion on notice (by any means of communication) that Ms. Witt was disputing her account with Sprint; and (3) what "procedures" GC Services "maintained" on or about March 21, 2013 and whether those procedures were "reasonably adapted" to avoid any errors that may have occurred with respect to Ms. Witt's account or the communication of information regarding Ms. Witt's account.

At the scheduling conference on December 18, 2013, the court set a discovery cutoff of March 18, 2014 and a dispositive motion deadline of April 18, 2014.  During the same scheduling conference, counsel for the parties were told, consistent with my practice standards, that

> Counsel may not file any OPPOSED discovery motions without leave of court. Counsel are instructed that should a discovery dispute arise they are to comply with Local Rule 7.1A in an effort to resolve the issues.  If that is unsuccessful, counsel shall establish a conference call adding Magistrate Judge Shaffer as the last connection.  The court will hear arguments and attempt to mediate a resolution.  The Court will instruct counsel at that time . . . whether . . . to file a

---

[5]The parties concede that the March 21, 2013 telephone conversation was recorded, and GC Services claims, apparently without contradiction, that it provided Plaintiff's counsel with a copy of that recording.  Notwithstanding the availability of that recording (which this court has never heard), the parties persist in disputing whether Ms. Witt's comments on March 21, 2013, in sum or substance, would or should have put GC Services' representative on notice that Plaintiff was disputing her Sprint account.

discovery motion.

*See* Courtroom Minutes/Minute Order (doc. #13).

Ms. Witt served her Fed. R. Civ. P. 26(a)(1) Initial Disclosures (doc. #62-1) on

December 11, 2013.  That same day Defendant GC Services served its Initial Disclosures (doc.

#62-2), "as required by Rule 26."  Defense counsel identified Ms. Witt and a "corporate

representative of GC Services, L.P." as individuals "likely to have discoverable information GC

Services may use to support its defenses to Plaintiff's claims."  As to documents, data

compilations or tangible things in his client's possession, custody or control that might be used

to support GC Services' defenses, *see* Rule 26(a)(1)(A)(ii), defense counsel referred to "any and

all audio records of telephone calls made to Plaintiff, if any, as well as documents pertaining to

GC Services' training procedures and classes regarding compliance with debt collection

practices laws."

Plaintiff's First Sets of Interrogatories, Requests for Production and Requests for

Admission were served on December 27, 2013.  On February 26, 2014, counsel for GC Services

served his client's responses by mail.  Plaintiff's counsel sent an e-mail to GC Services's

attorney on March 6, 2014, complaining that Defendant's "responses to the Plaintiff's discovery

requests are non responsive, incomplete and contain improper responses" and insisting that he

needed "complete and proper responses from the Defendant to be able to draft the deposition

Notice of the Defendant's Fed. R. Civ. P. 30(b)(6) Designee(s)." *See* Doc. #24, at 5 and 8 of 8.

Defense counsel responded by e-mail on March 10, 2014, asking Plaintiff's counsel to

> [T]ell me specifically what information you need in response to written discovery
> you sent and which you think we did not respond and I will get you that
> immediately so there is no further delay on your part. . . . Please let me know
> immediately what you claim should have been provided and which is keeping you

from identifying areas of inquiry for a 30(b)(6) deposition.

*See* Doc. #24, at 1 of 8.

That same day, after counsels' meet-and-confer efforts proved ineffective, the court held a telephone conference call to address disputes concerning the adequacy of Defendant's written discovery responses.  After a 90-minute discussion, I set another discovery conference call for March 17, 2014, at which time counsel were to report on the discovery issues they were able to resolve, the disputes that remained outstanding, and a proposed date by which written discovery would be completed.  On March 13, 2014, Defendant served its First Amended Objections and Responses to Ms. Witt's initial set of written discovery, which sparked yet another volley of contentious e-mails.  *See Selectica, Inc.*, 2014 WL 1930426, at *2 ("discovery should be practiced with a spirit of cooperation and civility").

On March 17, one day before the close of discovery, I again spoke by telephone with counsel.  At that time, it became apparent the parties' positions had become intractable. Therefore, I gave Plaintiff's counsel leave to file a motion to compel on or before March 21, 2014.  The court stayed all discovery, including any scheduled depositions, pending the April 11, 2004 hearing and resolution of the parties' disputes over written discovery.

At approximately 3:40 pm on March 21, 2014, GC Services electronically served its Second Amended Objections and Responses to Plaintiff's first set of written discovery. Plaintiff's counsel filed his Motion to Compel with the court at 11:52 pm that same day.

## ANALYSIS

The discovery procedures established under the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging

7

discovery of information.  *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392

(C.D. Cal. 2002).  *See also McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 643 (D. Kan. 2003) (for

purposes of Fed. R. Civ. P. 26(b)(1), "relevancy is broadly construed, and a request for discovery

should be considered relevant if there is 'any possibility' that the information sought may be

relevant to the claim or defense of any party").  Rule 26(b)(1) currently authorizes "party-

controlled" discovery "regarding any non-privileged matter that is relevant to the claim or

defense of any party" and "court-permitted" discovery (upon a showing of good cause) of "any

matter relevant to the subject matter involved in the action."  *In re Cooper Tire & Rubber Co.*,

568 F.3d 1180, 1188 (10th Cir. 2009).[6]

---

[6]I also note that the reference in the current version of Rule 26(b)(1) to "discovery reasonably calculated to lead to the discovery of admissible evidence," cited in Plaintiff's Motion to Compel (and many reported decisions), was never intended to define or expand the scope of discovery.  *See* Rules Appendix B-10, http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014.pdf.  The Committee Note accompanying the 2000 amendment to Rule 26(b)(1) directed "the parties and the court [to] focus on the actual claims and defenses involved in the action."

> [T]he provision regarding discovery of information not admissible in evidence . . . was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible.  The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard . . . might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible . . .  As used here, "relevant" means within the scope of discovery as defined by in this subdivision.

*See* Fed. R. Civ. P. 26(b)(1), advisory committee note (2000).  Even after the 2000 amendment, litigants and courts have continued "to cite the 'reasonably calculated' language as defining the scope of discovery."  *See* Rules Appendix B-10, http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014.pdf.  The recently proposed amendment to Rule 26(b)(1) "will eliminate this incorrect reading of Rule 26(b)(1) while preserving the rule that inadmissibility is not a basis for opposing discovery of relevant information."  *Id.*  Counsel would be well-advised to strike the "reasonably calculated" language from their discovery lexicon and brief banks, and no longer rely on reported decisions that define

A party does not have an unfettered or absolute right to conduct discovery.  The court has considerable discretion to tailor discovery to the circumstances of the case at hand, to adjust the timing of discovery, and apportion costs and burdens in a way that is fair and reasonable. *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35 (D. Md. 2000).

> Rule 26(b)(2) . . . requires the court to balance various factors to determine just how much discovery is reasonable in a given case.  This analysis is tailored to the particular needs of each case, and requires the court to consider both the importance of the discovery sought to the moving party, as well as the cost and burden to the producing party.

*Id.* at 37-38.  "[W]hatever may be said for the virtues of discovery and the liberality of the federal rules, . . . there comes at some point a reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case*." Grynberg v. Total, S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182 , 186-87 (D Kan. 1997)).  *Cf. In re Complaint of Mobro Marine, Inc.*, No. 3:02-CV-471-J-2OTEM, 2003 WL 22006257, at *1 (M.D. Fla. Mar. 24, 2003) (suggesting that "counsel have a professional obligation to develop a mutual cost-effective plan for discovery" and promote the public's interest in minimizing the costs of litigation).

So, for example, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *See* Fed. R. Civ. P. 26(c).  *Cf. Qwest Communications International, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) ("in every case, the court has the discretion, in the interests of justice,

---

the scope of discovery by that phrase.

to prevent excessive or burdensome discovery").[7]  *But see Aikens v. Deluxe Financial Services, Inc.*, 217 F.R.D. 533, 536-37 (D. Kan. 2003) ("a party moving for a protective order must make a 'particular and specific demonstration of fact' in support of its request;" where the motion for protective order is based on a claim of undue expense or burden, the moving party must submit affidavits or other detailed explanation as to the nature, extent of the burden or expense). Similarly, Fed. R. Civ. P. 26(b)(2)(B) provides that a "party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."[8]  *Aguilar v. Immigration and Customs Enforcement*, 255 F.R.D. 350, 360 (S.D.N.Y. 2008).  *But see Cartel Asset Management v. Ocwen Financial Corp.*, No. 01-cv-01644, 2010 WL 502721, at *19 (D. Colo. Feb. 8, 2010) (noting that while Rule 26(b)(2)(B) provides a useful mechanism to address the unique challenges of electronic discovery, it "should not be invoked as a means to forestall the production of materials that are admittedly relevant and readily accessible").

The court also "*must* limit the frequency or extent of discovery otherwise allowed" by the Federal Rules of Civil Procedure if it determines (1) the discovery sought is unreasonably

---

[7]*See also Laughon ex rel. Laughon v. Jacksonville Sheriff's Office*, No. 3:06-cv-692-J-25SHTS, 2007 WL 1247305, at *2 (M.D. Fla. Apr. 30, 2007) (holding that a motion for protective order must be filed promptly and "is generally untimely if it is made after the date the discovery material was to be produced"); *Maxey v. General Motors Corp.*, No. 3:95CV60-D-A, 1996 WL 692222, at *2 (N.D. Miss. Nov. 18, 1996) ("[T]he party seeking the protective order, who has the burden of requesting and supporting it, should also be responsible for initiating the process.  Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes").

[8]The court may, nevertheless, require production of these materials if the requesting party "shows good cause, considering the limitations of Rule 26(b)(2)©."  *See* Fed. R. Civ. P. 26(b)(2)(B).

cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* Fed. R. Civ. P. 26(b)(2)© (emphasis added). *Cf. Intervet, Inc. v. Merial Ltd.*, 252 F.R.D. 47, 49 (D. D.C. 2008) ("[A]ll discovery is subject to the balancing test in Rule 26(b)(2)(C)(iii) . . . that requires a court to limit the discovery 'otherwise allowed by these rules' if the burden outweighs its likely benefit, considering (inter alia) the needs of the case, and the importance of the discovery is resolving the issues.").

Comparable constraints are imposed on counsel under Fed. R. Civ. P. 26(g). *Cf. Qualcomm Inc. v. Broadcom Corp.*, No,. 05cv1958-B (BLM), 2008 WL 66932, at *7 (S.D. Cal. Jan. 7, 2008) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. . . . This subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obligates each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."), *vacated in part*, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008).  By signing discovery requests or discovery responses and objections, counsel is certifying to the best of his or her "knowledge, information, and belief formed after a reasonable inquiry" that the request, response or objection is consistent with the Federal Rules of Civil Procedure and is not intended for any improper purpose such as "to harass, cause

unnecessary delay, or needlessly increase the cost of litigation." *See* Fed. R. Civ. P. 26(g)(1)(B)(I) and (ii).  Counsel also are certifying that their discovery requests, responses, and objections are "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the case." *See* Fed. R. Civ. P. 26(g)(1)(B)(iii).

The Advisory Committee on Federal Rules of Civil Procedure has proposed to relocate the proportionality factors currently found in Rule 26(b)(2)(C)(iii) to Rule 26(b)(1) and explicitly incorporate those factors in the scope of discovery.  Under this proposed amendment, Rule 26(b)(1) would permit parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[9]

"The Committee's purpose in returning the proportionality factors to Rule 26(b)(1) is to make them an explicit component of the scope of discovery, requiring the parties and courts alike to consider them when pursuing discovery and resolving discovery disputes."[10]  *Id.*  Application of the proportionality factors in a given case should not be transformed into a mathematical formula

---

[9]*See* Rules Appendix B-5,
http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014.pdf.

[10]*See* Rules Appendix B-8,
http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014.pdf.  The Advisory Committee "believes that more proportional discovery will decrease the cost of resolving disputes without sacrificing fairness." *Id.*  However, the same Committee Note makes clear that re-positioning the proportionality factors "does not place a burden of proving proportionality on the party seeking discovery" and "does not authorize boilerplate refusals to provide discovery on the ground that it is not proportional." *Id.*

or a debate over the "perfect fit."  In many instances, proportionality can best be achieved through an iterative approach as the pretrial process evolves and the parties' claims and defenses come into sharper focus.  Consistent with the parties' case management responsibilities under an amended Rule 1, counsel should address the proportionality factors during the Rule 26(f) conference.[11]  *See* Fed. R. Civ. P. 26(f) (a "discovery plan must state the parties' views and proposals" on, *inter alia*, "the subjects on which discovery may be needed," "whether discovery should be conducted in phases or be limited to or focused on particular issues," and "what changes should be made in the limitations on discovery imposed under these Rules").

The Federal Rules of Civil Procedure and judicial precedent also prohibit gamesmanship under the guise of discovery.  An evasive or incomplete discovery response will be treated as a failure to answer or respond.  *See* Fed. R. Civ. P. 37(a)(4).  Discovery requests must be given a reasonable construction, and a responding party is not permitted to conjure up ambiguity where there is none.  *King-Hardy v. Bloomfield Board of Education*, No. 3:01CV979 (PCD), 2002 WL 32506294, *5 (D. Conn. Dec. 8, 2002).  *Cf. Stoldt v. Centurion Indus. Inc.,* No. 03-2634-CM-DJW, 2005 WL 375667, *2 (D. Kan. Feb. 3, 2005) ("[a] party responding to discovery requests should exercise reason and common sense").  Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections.[12]

---

[11]"[P]roportionality requires making good judgments about *where and how discovery should begin*."  Steven S. Gensler & Lee H. Rosenthal, *Four Years After Duke: Where Do We Stand on Calibrating the Pretrial Process* 18 Lewis & Clark L. Rev. 43, 661 (2014) (suggesting that proportionality should be approached "as a question of where to start rather than a question of where to end").

[12]If a currently proposed amendment to Fed. R. Civ. P. 34(b)(2) is adopted, a party responding to requests for production will be required to state "with specificity the ground for objecting to the request, including the reasons" and will be required to "state whether any

*See, e.g., Ayers v. Continental Casualty Co.*, 240 F.R.D. 216, 221 (N.D. W.Va. 2007); *Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D.N.Y. 2000).  Most importantly, Rules 33 and 34 require a party to answer to the extent a discovery request is not objectionable.  *See, e.g, Doe v. National Hemophilia Foundation*, 194 F.R.D. 516, 520 (D. Md. 2000).

In short, the Federal Rules of Civil Procedure impose a "stop and think" obligation both on the party serving discovery requests and the party serving responses and objections.

> It cannot seriously be disputed that compliance with the "spirit and purposes" of these discovery rules requires cooperation by counsel to identify and fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation.  Counsel cannot "behave responsively" during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation.

*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008).  Rule 26(g) "aspires to eliminate one of the most prevalent of all discovery abuses:  kneejerk discovery requests served without consideration of cost or burden to the responding party" and "the equally abusive practice of objecting to discovery requests reflexively  – but not reflectively – and without a factual basis."  *Id.  Cf. Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1246 (9th Cir.1981) ("The discovery process is subject to the overriding limitation of good faith.  Callous disregard of discovery responsibilities cannot be condoned."); *Trading Technologies International, Inc. v. eSpeed, Inc.,* No. 04 C 5312, 2006 WL 2506293, at *1 (N.D.Ill. Jul. 18, 2006) (noting that "the discovery process depends upon the good faith of the parties and their counsel").  Counsels' conduct in this case must be evaluated against the backdrop of the foregoing Rules and judicial precedents.

---

responsive materials are being withheld on the basis of that objection."  *See* Rules Appendix B-51 and 52, http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014.pdf.

I.      **Plaintiff's Motion to Compel**

In moving for relief, Ms. Witt seeks additional responses to her Interrogatories 3, 4 and 8, and Requests for Production 1 and 2.  Counsel contends that the requested information "is relevant to the Plaintiff's FDCPA claim and the affirmative defenses plead by the Defendant in this case," "is also reasonably calculated to lead to the discovery of admissible evidence," and is necessary to permit a productive and meaningful Fed. R. Civ. P. 30(b)(6) deposition of GC Services.  *See* Plaintiff's Motion to Compel, at 6 and 7.

Plaintiff's Reply to Defendant's Response explains that with respect to Interrogatory No. 3, GC Services has not specifically identified the information that was sent to the credit bureaus on March 15, 26 and 25, 2013.  More particularly, Plaintiff's counsel asserts that the requested information "cannot be ascertained from documents Bate stamped GC 14-21."[13] *See* Plaintiff's Reply, at 3.  In the same Reply brief, Plaintiff's counsel insists that GC Services' responses to Interrogatory No. 4 remain deficient because Defendant "does not identify what information it communicated regarding the Sprint account at issue in the case on what date(s) and time(s) as requested."  *Id.* at 4.  As for Interrogatory No. 8, Plaintiff complains that GC Services's Second Amended Response alludes to "concomitant company policies" but "does not identify the policies it is referring to as requested," and that Defendant still has not produced those policies in

_____

[13]Ms. Witt's counsel further insists in conclusory fashion that "[t]he information and documents requested via Interrogatory No. 3 are within the Defendant's Possession, Custody or Control under Fed. R. Civ. P. 34(a) and must be produced by the Defendant even if the Defendant has to request the documentation from the credit bureaus."  *See* Plaintiff's Reply, at 3. Yet Interrogatory No. 3 asks GC Services to "identify" facts or events; that particular discovery request does not require Defendant to physically produce anything.  Therefore the reference to "possession, custody or control" seems out of place as its relates to Defendant's responses to Interrogatory No. 3.

response to Request for Production No. 4.[14]  *Id.* at 5.  Plaintiff maintains that GC Services'
responses to Request for Production of Documents Nos. 1 and 2 are deficient because Defendant
has not "produced copies of the information that it communicated to the credit bureaus regarding
the Plaintiff's Sprint account for the time frame listed" and has not produced "copies of the
information it communicated to Sprint" regarding the same account and time frame.  *Id.*  Ms.
Witt's motion closes with a request for an Order "requiring the Defendant to answer completely
and without objection the Discovery requests listed above and Order the Defendant to pay the
attorney's fees and costs of the Plaintiff for preparing this Motion, for preparing any reply to the
Defendant's response to this Motion and for attending any hearings on this Motion."  *Id.* at 8.

 Rather than responding to the specific issues raised in Ms. Witt's Motion to Compel,
Defendant's Response (doc. #26) suggests that Plaintiff is simply complaining because "GS
Services has not provided the answers she seeks in the form Plaintiff expected."  *See* Response,
at 1 (emphasis in original).  Defendant insists, to the contrary, that it is "has fully complied with
its discovery obligations, including supplemental and amended responses to interrogatories and
production."  *Id.*  GC Services broadly attacks Plaintiff for refusing to accept its offer of
judgment, conducting discovery in a manner that is "wholly disproportionate to the nature of this
simple FDCPA," and engaging in a "relentless pursuit of additional nonexistent information."
*Id.* at 6 and 7.  In a Supplement to its Opposition (doc. #49), Defendant repeats its assertion that
it has "produced all documents in its possession relevant to the issues in this litigation."

---

[14]Plaintiff argues that GC Services should not be permitted to asserted the bona fide error
defense as an affirmative defense in this action "and then refuse to provide information regarding
the maintenance of procedures reasonably adapted to avoid the errors alleged by the Plaintiff in
this case."  *See* Plaintiff's Motion to Compel, at 6.

A.      *Interrogatory No. 3*

In her third interrogatory, Ms. Witt asked GC Services to:

> Identify what the Defendant communicated regarding the Sprint account(s) at
> issue in this case from October 2012 through and including December 2013, by
> date reported, to any credit bureau(s) including Experian, Equifax and Transunion
> including identifying the date(s) and time(s) that the information was
> communicated to the credit bureau(s), the system(s) that the Defendant uses to the
> communicate information to the credit bureau(s), what information was
> communicated to the credit bureau(s) on what date(s) and time(s) including
> whether or not the Defendant communicated to what credit bureau(s) that the
> Sprint account(s) at issue in this case was disputed on what date(s) and time(s),
> how the information was communicated to the credit bureau(s), identify any
> individuals at the Defendant who took any action to communicate any
> information regarding the Sprint account(s) at issue in this case to any credit
> bureau(s) on what date(s) and time(s) and identify any inquiries made to any
> credit bureau(s) including identifying any responsive document(s) and/or items by
> bate stamped numbers.[15]

Defendant's initial response served electronically on February 26, 2014, did not include

any objections specifically directed to Interrogatory No. 3 and stated generally that:  "GS

Services provides credit bureaus the alleged debtor's name, social security number, the existence

and amount of the debt, and to whom the alleged debt is owed.  If a consumer disputes the debt,

GC Services also will notify the credit bureau of this fact."  *See* Doc. #23 at 5 of 28.  Nothing in

the foregoing statement specifically relates to Ms. Witt or describes how Defendant handled

---

[15]Plaintiff's Complaint alleges that Ms. Witt disputed her account during her March 21,
2013 telephone conversation with a GC Services representative, and thereafter Defendant was
obligated to include that information in its communications with credit bureaus about Ms. Witt's
account.  Consistent with that theory, Plaintiff could have propounded a simple interrogatory that
asked:  "After March 21, 2013, did you or anyone acting on your behalf inform or put any credit
bureau on notice, either orally, by writing or by electronic communication, that Ms. Witt was
disputing her Sprint account."  If the answer to that interrogatory was "yes," Plaintiff could have
addressed the specifics of that communication with a follow-up interrogatory, or explored the
topic during a Fed. R. Civ. P. 30(b)(6) deposition.  Either approach would have been more
straight-forward than Interrogatory No. 3 as drafted.

Plaintiff's particular account.  GS Service's original response to Interrogatory No. 3 then went on to state:

> On March 15, 2013, GC Services initially reported the balance of Plaintiff's alleged debt to be $968.  Then, on March 26, 2013, GC Services reported the fact that Plaintiff paid $20 toward her debt, which left a $948 amount outstanding.  Finally, on May 29, 2013, GC Services removed the credit bureau reporting of $948 with each of the three (3) bureaus.[16]

*Id.*

Defendant's original response conspicuously failed to address each and every subpart in Interrogatory No. 3, in violation of Rule 37(a)(4) which states that "an evasive or incomplete" discovery response "must be treated as a failure" to answer or respond.  For example, GC Services did not indicate "what systems [it] used to communicate" information to the credit bureaus, "how the information was communicated to the credit bureaus," the identity of "any individuals at the Defendant who took any action to communicate any information" to any credit bureaus, or "any inquiries made to any credit bureaus."  While much of the foregoing information seems redundant or superfluous, given the limited damages available under the FDCPA, Defendant did not object to Interrogatory No. 3 on any grounds.  Certainly, Defendant did not challenge Interrogatory No. 3 as violative of Plaintiff's counsel's certification obligations

---

[16]On the very same day, defense counsel signed and served responses to Plaintiff's Request for Admission.  Remarkably, in those responses defense counsel "denied" that "after March 21, 2013 and before April 9, 2013 the Defendant communicated information regarding the Sprint account at issue in this case to Experian, Equifax and/or Transunion."  It seems difficult, if not impossible, to reconcile this unequivocal "denial" with Defendant's initial response to Interrogatory No. 3.  *See* Doc. #23, at 18-28.  GC Services subsequently admitted that request in its First Amended Objections and Responses to Plaintiff's Request for Admission to Defendant, served on March 21, 2014.  *See* Doc. #24-3, at 3 of 5.

under Rule 26(g)(1).[17]  In the absence of some proper objection, defense counsel was required to provide a "true, explicit, responsive, complete and candid answer[ ]."  *See Huthnance v. District of Columbia*, 255 F.R.D. 285, 293 (D.D.C. 2008).  *Cf. Hernandez, Kroone and Associates, Inc. v. United States*, No. 07-165 C, 2008 WL 4725433, at *2 (Fed. Cl. Jun. 16, 2008) (noting that interrogatories should be answered "directly and without evasion in accordance with information that the answering party possesses after due inquiry").

Defendant served its First Amended Objections and Responses to Plaintiff's First Set of Interrogatories on March 13, 2014.  The first supplemental response to Interrogatory No. 3 stated that "[n]one of GC Services' employees communicated any information to any of the three credit bureaus."  Defendant then explained that it "utilizes a computerized system called the Star Collections System that automatically process (sic) information about a debt" and "automatically reports the account to Experian, Equifax and Transunion" if 45 days pass without payment or "any time the account's status is changed, such as if a consumer makes a payment."  Presumably because this reporting occurs automatically, the supplemental response also asserted that "no individual plays any role in this process and no person has any contact with the credit bureaus about these matters."  Finally, the supplemental response to Interrogatory No. 3 also stated that information reported to credit bureaus "appears as an entry in the Account Detail Listing" indicated by the prefix "CBU," and that "[t]his Acount Detail Listing has already been provided to Plaintiff as documents labeled GC 14-21."

---

[17]Interesting, Defendant accuses Ms. Witt's counsel of failing to comply with the "'stop and think' mandate underlying the discovery rules."  *See* Defendant's Response (doc. #26), at 6. That argument might have been more persuasive (and the instant discovery dispute avoided) had defense counsel complied with that same mandate.

On March 21, 2014, Defendant GC Services served its Second Amended Objections and Responses to Plaintiff's First Set of Interrogatories.  In that further supplemental response, Defendant specifically responded to each enumerated sub-part of Interrogatory No. 3 and used phrases such as "initial report information" and "final report information," but then affirmatively represented that the information communicated to Experian, Equifax and Transunion on the specified occasions "can be ascertained from documents Bates labeled GC 14-21."[18]  *See* Doc. #24-4, at pages 6-8 of 16.

Plaintiff insists that these successive responses still do not "identify what information was sent to the credit bureaus" on March 15, 2013, March 26, 2013 and May 29, 2013, or "specify[ ] what information was sent" on those dates.

B.      *Interrogatory No. 4*

Ms. Witt's fourth Interrogatory asked Defendant to "[i]dentify what the Defendant communicated on the Sprint account(s) at issue in this case from October 2012 through and including December 2013, by date and time reported, to Sprint, including identifying the date(s) and time(s) that the information was communicated to Sprint, the system(s) that the Defendant uses to communicate information to Sprint, what information was communicated to Sprint on what date(s) and time(s) including whether or not the Defendant communicated to Sprint that the

---

[18]Defendant's initial response to Interrogatory No. 3 was one paragraph in length, consisting of 7 lines of text.  The second amended response to Interrogatory No. 3 required two and half pages of text.  Presumably the second amended response does not include any information that was not already available to GC Services, and therefore its counsel, at the time the initial response was drafted and served in February 2013. *Cf. Fann v. Hartford Underwriters Ins. Co.*, No. 11-cv-3156-CMA-BNB, 2012 WL 5363791, at *1 (D. Colo. Oct. 31, 2012) (noting that a responding party must "answer the interrogatories posed to them based on the information [then] in their possession after reasonable inquiry").

Account was disputed on what date(s) and time(s), how the information was communicated to Sprint including identifying any responsive document(s) and/or item(s) by bate stamped numbers."

On February 26, 2014, GE Services succinctly responded: "None.  Plaintiff did not dispute her debt owed to Sprint."  *See* Doc. #23, at 5 of 28.  To the extent that Interrogatory No. 4 could be construed reasonably to encompass *any* information communicated to Sprint (by *any* means) about Ms. Witt's account, this answer was not completely responsive for purposes of Rule 37(a)(4), and failed to satisfy the certification requirement of Rule 26(g).

On March 13, 2014, defense counsel served his client's first amended response to Interrogatory No. 4, stating that "none of GC Services' employees communicated any information to Sprint."  In the same amended response, defense counsel explained that "GC Services utilizes a computerized system called the Star Collections System that automatically process information about a debt" and that Sprint sends 'live' accounts electronically to GC Services."  According to counsel, activity relating to a particular account occurs automatically and electronically, and so "no individual plays any role in this process and no person has any contact with the credit bureaus about these matters."  Counsel also advised that the information set forth in the amended response "is indicated in the documents produced and Bates labeled GC 14-21."

On March 21, 2014, Defendant GC Services served its second amended response to Interrogatory No. 4.  That supplemental response separately addressed each sub-part of Interrogatory No. 4 and elaborated on the original one paragraph answer with two and a half pages of text.  Defense counsel stated, in part, that "[e]very time the system reports information

to Sprint, the report appears as an entry in the Account Detail Listing" which "has already been provided to Plaintiff as documents Bates labeled GC 14-21." *See* Doc. #24-4, at 9-11 of 16. Plaintiff's counsel insists that GC Services' second amended response to Interrogatory No. 4 remains deficient because Defendant "does not identify what information it communicated regarding the Sprint account at issue in the case on what date(s) and time(s) as requested."

C.   *Interrogatory No. 8*

Defendant GC Services was asked in Plaintiff's Interrogatory No. 8 to: "Identify and describe in detail the factual basis for Defendant's Bona Fide Error defense pursuant to 15 U.S.C. § 1692k©, including identifying all document(s) and/or items that are part of the defense by bate stamped numbers and including a description of:

a.   The alleged error(s);
b.   The date(s) of the alleged error(s);
c.   The person(s) who made the error(s);
d.   The person(s) who supervised the person(s) making the error(s);
e.   The policies and procedures in place that are reasonably designed to prevent such error(s), including *whether they are written or not*, and if written, identified by bate stamped numbers, and if not written, stated in response to this interrogatory;
f.   The policies and procedures the Defendant had in place to make sure that the policies and procedures reasonably designed to prevent such error(s) were being followed;
g.   The number and circumstances of other similar errors in the two years previous to this/these alleged error(s);
h.   The date you discovered the error(s); and
I.   The result of any investigations you made into each alleged error(s).[19]

_____

[19]Plaintiff's counsel might have avoided the dispute over Interrogatory No. 8 simply by asking: "To the extent that you may, on motion or at trial, assert the bona fide error defense under 15 U.S.C. § 1692k(a) with respect to Plaintiff's account, please state the factual basis for that affirmative defense, identify the principal witnesses you will rely upon to support that defense, and any documents or electronic information you will rely upon to support that defense or demonstrate your 'maintenance of procedures reasonably adapted to avoid such error.'"

*See* Doc. #23, at 6 of 28 (emphasis added).

Defense counsel responded to this Interrogatory on February 26, 2014, stating that "GC

Services does not contend its employees committed any error in relation to its work regarding

Plaintiff's indebtedness to Sprint." *Id.*

> However, to the extent the Court finds otherwise and determines GC Services
> violated the Fair Debt Collection Practices Act, any such error was not
> intentional.  Plaintiff did not dispute her debt owed to Sprint.  Even if Plaintiff's
> telephone call could be construed as a dispute, GC Services' account
> representative could not have reasonably understood the conversation to mean the
> Plaintiff disputed her cellular telephone debt.

*Id.*  This response can only be described as evasive, particularly in light of the affirmative

defense included in GC Services' Answer.  Defendant first denies that its employees committed

any error, bona fide or otherwise, in handling Ms. Witt's account.  Defense counsel then implies

that Plaintiff is entitled to information responsive to Interrogatory No. 8 only if and after "the

Court . . . . determines GC Services violated the Fair Debt Collection Practices Act."  *Cf. Frye v.*

*Bowman*, *Heintz, Boscia, Vician, P.C.*, 193 F. Supp.2d 1070, 1089 (S.D. Ind. 2002) (holding that

the bona fide error defense shielded the debt collector from liability where defendant's evidence

was unrebutted by plaintiff).  Yet the court or jury will make that determination well after

discovery closes.  Defendant apparently wished to retain the option of relying on the bona fide

error defense while denying Plaintiff any discovery relevant to that affirmative defense.  I am

hard-pressed to understand how this interrogatory response passes muster under Rule 37(a)(4).

Moreover, Defendant's response to Interrogatory No. 8 does not identify "the person who

made the error," the "person who supervised the person making the error," the "policies and

procedures the Defendant had in place" that were "reasonably designed to prevent such errors,"

the date the "error" was "discovered," the "results of any investigations" undertaken by GC

Services, or "the number and circumstances of similar errors" in the past two years.  *But see*

*Reed v. AID Assocs.*, 573 F. Supp.2d 1105, 1108 (S.D. Ind. 2008) (to establish the bona fide

error defense under § 1692k©, the debt collector must show, *inter alia*, that the error was made

in good faith and was a genuine mistake, rather than a contrived mistake, and must show that it

employed procedures reasonably adopted to avoid error); *Bell v. Bowman, Heintz, Boscia &*

*Vician, P.C.*, 370 F. Supp. 2d 805, 811-12 (S.D. Ind. 2005) (holding that fact questions remained

concerning whether defendant made bona fide errors under § 1692k(c); although defendant's

misstatements were unintentional, it submitted no information to indicate it took reasonable

preventative measures to avoid incorrect data submissions).

Those omissions were addressed in Defendant's first amended response to Interrogatory

No. 8, served on March 13, 2014.  In particular, this amended response noted that "GC Services

enforces the statutory provisions of the FDCPA and has concomitant company policies requiring

an account representative to include in the commentary for each collection call information the

account representative considers to be a dispute of a debt."  Defense counsel, during the hearing

on July 1, 2014, insisted that his client does not "have written policies that tell people how to tell

whether someone's language constitutes a dispute."  *See* Transcript of Proceedings (doc. #41), at

108.  In response to Request for Production No. 8, which asked for "any and all documents,

audio recordings(s) and/or items . . . related to the factual basis for Defendant's Bona Fide Error

Affirmative Defense," defense counsel's second amended response states "none other than the

audio recordings and account notes already produced."

Ms. Witt complains that GC Services's response, as amended, alludes to "concomitant

company policies" but then "does not identify the policies it is referring to as requested."

Moreover, Plaintiff objects that GC Services failed to produce these "concomitant company policies" as part of its production under Fed. R. Civ. P. 34.  Plaintiff's criticisms are well-founded.  First, Interrogatory No. 8 is not limited to policies, but also requests information about "procedures" that Defendant had in place that were reasonably designed to prevent errors, "including whether they are written or not."  Yet, the word "procedures" does not appear in GC Services' supplemental response.  I also note that Defendant's Initial Disclosures refer generally to "documents pertaining to GC Services' training procedures and classes regarding compliance with debt collection practices laws."  Plaintiff's counsel, and the court, are entitled to presume that defense counsel (and his client) would not bother to "disclose" documents or other tangible things under Rule 26(a)(1)(A)(ii) that did not exist.  To the extent those "training procedures and classes" addressed how GC Services representatives should interact with individuals on the telephone or how they should document those conversations, they were subsumed within Plaintiff's discovery request and, therefore, should have been identified and included in a narrative response to Interrogatory No. 8.

D.      *Requests for Production No. 1 and No. 2*

Plaintiff's first Request for Production asks for "all documents and/or any information communicated to and/or requested from Experian, Equifax and/or Transunion by the Defendant from October 2012 through and including December 2013 on the Sprint account(s) at issue in this case, identified by bate stamped number(s)."  In Request for Production No. 2, Ms. Witt seeks "all documents and/or any information communicated to Sprint by the Defendant from October 2012 through and including December 2013 regarding the Sprint account(s) at issue in this case, identified by bate stamped number(s)."  In moving to compel, Ms. Witt contends that

25

GC has not "produced copies of the information that it communicated to the credit bureaus regarding the Plaintiff's Sprint account for the time frame listed" and has not produced "copies of the information it communicated to Sprint" regarding the same account and time frame.

Defendant's first set of Objections and Responses to Plaintiff's Request for Production only stated that GC Services had "no documents responsive to [Request for Production No. 1] and that '[a]ll information is transmitted electronically and no documents related to the transfer are maintained." Defendant also asserted that it has "no documents responsive to [Request for Production No. 2]." See Doc. #23, at 12 of 28. Defendant did not raise specific objections to either Request.

With its First Amended Objections and Responses, GC Services explained that it did not have "any documents responsive to" Request No. 1 because none of its employees "communicated any information to any of the three credit bureaus." According to Defendant, the "Star Collections System" automatically reports account information to Experian, Equifax and Transunion, which means that "no individual plays any roll in this process and no person has any contact with the credit bureaus." Yet, unlike its initial response to this Request for Production, GC Services' supplement response conceded for the first time that it had transmitted information relative to Ms. Witt's account.

> Every time the [Star Collections System] reports information to the credit bureaus, the report appears any an entry in the Account Detail Listing, which has already been provided to Plaintiff as documents labeled GC 14-21. . . . With regard to Plaintiff's account, GC Services' computer system automatically sent information to the credit bureaus three times:
>
> > (1) On March 15, 2013, sending the initial report;
> > (2) On March 26, 2013, sending information regarding Plaintiff's $20 payment; and
> > (3) On May 29, 2013, sending the final report after Spring recalled the account.

Defendant insisted that "[a]ll of this is listed in the documents produced and Bates labeled GC 14-21."   The latter statement was conspicuously missing from GC Services' original response to Request No. 1.

Defendant's First Amended Objections and Responses to Request No. 2 again referenced the Star Collections System, claimed that all information about a debt is processed and communicated electronically, and denied that any of its employees played any role in communicating information to Sprint.  Defendant claimed that "[e]ach communication to or from Sprint is notated in documents already provided to Plaintiff labeled GC 14-21."  Again, the latter sentence was not included in Defendant's first response to Request No. 2.

On March 21, 2014, Defendant served its Second Amended Objections and Responses to Plaintiff's Request for Production of Documents.  *See* Doc. §24-5, at 3-6 of 10.  As to Request No. 1, Defendant again claimed that it "does not have any documents responsive to this request, as none of GC Services' employees communicated any information to any of the three credit bureaus."  Defense counsel provided additional information regarding the communications that occurred on March 15 and 26, 2013 and May 29, 2013, and also stated (for the first time):

> To generally explain GC Services' system, each of the three credit bureaus receives GC Services' electronic, automatic transmissions using their own electronic systems, which then process and interpret the data.  GC Services does not process these transmissions.  GC Services does not maintain any copies of the processed version of this transmitted information.  In order to receive a copy of the processed version of any of these electronic transmissions, including the initial report, GC Services would have to ask any of the credit bureaus directly. . . . GC Services never electronically communicated information labeling Plaintiff's account as disputed because Plaintiff never disputed her debt.

Defendant's second amended response to Request No. 2 also provided amplifying information.  Although that Request only seeks "documents and/or any information

communicated to Spring by the Defendant" regarding Ms. Witt's account, Defendant's second amended response identified various dates when "Sprint sent GC Services an update on Plaintiff's account."  For the first time, Defendant also specifically identified those occasions when "the parties communicated financial information to each other."  But again, defense counsel insisted that "[e]ach time the [Star Collection] system reports information to Sprint, the report appears as an entry in the Account Detail Listing.  This Account Detail Listing has already been provided to Plaintiff as documents labeled GC 14-21."

After reviewing the forgoing sequence of discovery responses and supplemental responses, the court finds that defense counsel failed to comply with his certification obligations under Rule 26(g).  Counsel was required to certify, to "the best of [his] knowledge, information and belief, formed after a reasonable inquiry," that his client's discovery responses were consistent with the Federal Rules of Civil Procedure and not interposed for an improper purpose, "such as to . . . cause unnecessary delay, or needlessly increase the cost of litigation."  Defense counsel also was required to reasonably construe Ms. Witt's interrogatories and requests for production and conduct a reasonable search for responsive information.  *Cf. Reinsdorf v. Skechers, U.S.A., Inc.,* 296 F.R.D. 604, 615 (C.D. Cal. 2013).  The court does not expect perfection and will not "'infer nefarious intent or bad faith' from 'ordinary discovery errors.'" *Id.* However, the court will not overlook or condone discovery responses that omit or withhold information that is plainly responsive and unequivocally within the knowledge or control of the responding party.  "A party answering interrogatories [and requests for production] must provide to the requesting party all 'information that is available to it and that can be given without undue labor and expense."  *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 360 (D. Md. 2012).

28

Simply put, Defendant's initial discovery responses were inadequate and patently deficient under Rule 26(g).  For example, Defendant initially claimed, in response to Request Nos. 1 and 2, that it "had no documents responsive to [these requests]."  Yet, the Requests sought all "documents and/or any information."  I am at a loss to understand why defense counsel withheld from his original responses the information subsequently disclosed in his supplemental responses.  Similarly, Defendant's initial responses conspicuously failed to acknowledge or address subparts contained within Interrogatory Nos. 3, 4 and 8.  Although defense counsel now takes exception to the volume or types of information sought through Ms. Witt's written discovery, those objections were never raised in counsel's initial discovery responses.  *Cf. Booth v. Davis*, No. 10-4010, 2014 WL 3542059, at *2 (D. Kan. Jul. 17, 2014) (holding that objections asserted for the first time in response to plaintiff's motion to compel had been waived based upon defendant's failure to initially assert those objections when responding to plaintiff's request for production); *Anchondo v. Anderson, Crenshaw & Associates, LLC*, 256 F.R.D. 661, 665 (D.N.M. 2009) (holding that because defendant did not make a timely objection to plaintiff's interrogatory, any objections to that interrogatory had been waived).  Accordingly, I find that defense counsel failed to comply, without substantial justification, with Rule 26(g)(1) and will impose a monetary sanction on defense counsel.  Counsel will be required to pay to Plaintiff's counsel the sum of $500 to defray expenses, including reasonable attorney's fees, related to the instant motion.

While the court cannot overlook defense counsel's violation of Rule 26(g), I also cannot condone discovery requests that ignore principles of proportionality, reasonableness, convenience, and common sense.  *Cf. Selectica, Inc.*, 2014 WL 1930426, at *4.  The court

should not evaluate a responding party's discovery answers in a vacuum; a motion to compel necessarily requires the court to apply the Rule 26(g) standard to the moving party's interrogatories and requests for production.  I appreciate the public policies underlying the Fair Debt Collection Practices Act and counsel's role in vindicating his client's interests pursuant to that statute.  *Cf. Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636, 638-39 (7th Cir. 2014) ("The FDCPA is designed to protect consumer debtors against unscrupulous methods of consumer debt collection" by eliminating "abusive debt collection practices")*; Brown v. Mandarich Law Group, LLP*, No. 13-cv-04703-JSC, 2014 WL 2860631, at *2 (N.D. Cal. June 23, 2014) ("Congress designed the FDCPA to encourage private parties to bring actions, mandating an award of attorney's fees 'as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.'").  However, those laudable objectives must be pursue in a manner consistent with the Federal Rules of Civil Procedure and the equally important goal of achieving a "just, speedy and inexpensive determination" of every action.

"All discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)©." *Lynn,* 285 F.R.D. at 355.  Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses.  To the extent that Rule 26(g) incorporates proportionality factors and imposes a mandate on counsel to "stop and think," counsel (and ultimately the court) first must consider whether the desired information is relevant to the claims and defenses in the action, and then ask whether the proposed discovery is proportional to the needs of the case or unduly burdensome or expensive based upon an assessment of various factors.  *See, e.g., Audiotext Communications v. U.S. Telecom, Inc.,* No. 94-2395-GTV, 1995 WL

18759, at *1 (D. Kan. Jan 17, 1995) (discovery "[r]equests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not"). *See also Thompson v. Department of Housing and Urban Development*, 199 F.R.D. 168, 171 and 173 (D.Md 2001) (in denying plaintiffs' motion to compel, the court noted that "despite the obvious utility of the Rule 26(b)(2) factors in tailoring discovery to accommodate fair disclosure without imposing undue burden or expense, they have tended largely to be ignored by litigants;" "the parties are expected to focus their discussions not on their scope difference under Rule 26(b)(1), but instead on a particularized analysis of the burden/benefit factors of Rule 26(b)(2);" "[t]his means that the parties must set aside their differences as adversaries and make a good faith effort to reach common ground on the disputes").

Plaintiff alleges, in her Complaint, that she spoke by telephone with a GC Services employee on March 21, 2013, that she put GC Services on notice that she was disputing her Sprint account, and that during the same call the GC Services employee made certain false representations. Plaintiff further contends that after March 21, 2013, Defendant never communicated to Experian, Equifax or Transunion that she was disputing her Sprint account. The March 21, 2013 call was recorded and Plaintiff has been given a copy of that recording. Defendant concedes that it never told the credit reporting bureaus that Ms. Witt's account was disputed, because (according to Defendant) Plaintiff did not make such an assertion during the March 21st call. It is also clear that Ms. Witt's personal recovery in this case is limited to no more than $1,000, notwithstanding her counsel's ability to recover reasonable fees and costs if she prevails. Those are the circumstances that frame the court's proportionality analysis in this

case.

Plaintiff's counsel insists that he needs additional information in response to his written discovery in order to frame a Rule 30(b)(6) deposition notice.  Yet, after three iterations of discovery responses, I am loath to require additional answers to unfocused or broadly drafted interrogatories and requests for production.  Rule 26(b)(2)(A) states that I must limit the frequency or extent of discovery if I find, *inter alia*, that the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive."

Given counsel's intention to depose a GC Services representative, the clarification or additional information Ms. Witt seeks with this motion can be reflected in a Rule 30(b)(6) notice and explored during the subsequent deposition.[20]  *Cf. United States ex rel. Fago v. M&T Mort. Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006) (concluded there was "no added benefit to compelling the same information through a Rule 30(b)(6) deposition because, like Rule 30(b)(6) deposition testimony, an interrogatory can be served on and answered by a corporation via its officers and agents"); *Banks v. Office of the Senate Sergeant-At-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004) (emphasizing the court's expectation that "the parties [will] find topics that will insure that the

---

[20]*See also Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (the entity responding to a Rule 30(b)(6) deposition notice "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters"); *Calzaturficio S.C.A.R.P.A. S.P.A v. Fabiano Shoe Company, Inc.*, 201 F.R.D. 33, 37 (D. Mass. 2001) (in holding that defendant's witnesses were not properly prepared to testify as Rule 30(b)(6) representatives, the court rejected defense counsel's argument that the corporate deponents were adequately prepared because corporate documents had previously been produced and the deponents "have no more knowledge about such records and the subject matter of such records other than what can be learned from reading them").

30(b)(6) depositions are meaningful exercises in ascertaining information that has not been previously discovered or are necessary to ascertain the positions [defendant] took or takes as to factual and legal issues that have arisen"). Inherent in any proportionality analysis is the expectation that litigants will use the available discovery tools in an efficient and cost-effective manner. While a party is entitled to discover relevant information under Rule 26(b)(1), counsel is not entitled to unnecessarily or repeatedly plow over old ground.

In conclusion, I will grant Plaintiff's Motion to Compel in part and require GC Services to supplement its response to Interrogatory No. 8. I will require GC Services to identify and describe all policies and procedures (whether written or not) and all programs established or implemented by Defendant to train and monitor its employees' compliance with debt collection practice laws, including the FDCPA. Defendant also is required to identify and describe any policies and procedures (whether written or not) and programs that address how GC Services employees shall interact with account holders over the telephone, and whether and how employees should document those communications. This supplemental response must be served within seven (7) calendar days of the date of this Order. The court will also impose sanctions against defense counsel pursuant to Rule 26(g)(3) as indicated above.

## II.       Defendant's Second Amended Motion to Compel

To spare the reader, the court will not recite the arguments and attendant circumstances set forth in Defendant GC Services' Second Amended Motion to Compel Plaintiff's Discovery Responses & Motion for Sanction (doc. 54). Suffice to say, this motion and Plaintiff's Response (doc. #58) are further manifestations of a discovery process that has been unnecessarily acrimonious. The court remains convinced that counsel for both sides are intent on  finding

problems (real or imagined) and airing grievances (however insignificant), rather than working together cooperative to move this case forward.   This motion, thankfully, can be resolved on very narrow grounds.

Counsel for both sides were present in my courtroom on December 18, 2013 when I conducted a scheduling conference in this case.   The Courtroom Minutes (doc. #13) reflect that I instructed counsel that they

> [M]ay not file any opposed discovery motions without leave of court.  Counsel are instructed that should a discovery dispute arise they are to comply with Local Rule 7.1A in an effort to resolve the issues.  If that is unsuccessful, counsel shall establish a conference call adding Magistrate Judge Shaffer as the last connection. The court will hear arguments and attempt to mediate a resolution.  The court will instruct counsel at that time as to whether or not to file a discovery motion.

Defendant's original Motion to Compel and for Sanctions was filed on September 4, 2014 and the amended motion was filed the next day.  My review of the docket sheets shows that my last oral communication with counsel regarding any subject occurred on July 1, 2014.  It appears that defense counsel failed to comply with my clearly articulated practice standard, and the Amended Motion to Compel and for Sanctions will be denied without prejudice on that basis.  *Cf. Greystone Const. Inc. v. National Fire & Marine Ins. Co.,* No. 07-cv-00066-MSK-CBS, 2008 WL 795815, at *2 (D. Colo. Mar. 21, 2008).

Defense counsel apparently was under the impression that comments the court made during the hearing on July 1, 2014 obviated the need to confer pursuant to Local Rule 7.1A or to arrange the telephone discovery conference mandated by my practice standards.  During that hearing the court had the follow colloquy:

> Defense Counsel:   . . . When Your Honor suspended discovery several months ago –

The Court:   . . . . I'm still suspending discovery. Nobody's going to do discovery until I get this resolved.

\*     \*     \*

Defense Counsel:    Well, the plaintiff owed responses to requests for production.   They're two days short of the deadline. [Plaintiff's counsel] has not produced those things because Your Honor has –

The Court:    . . .  I am staying doing any more discovery.  If there's outstanding discovery that was served and responses are due, I expect those done.

Plaintiff's Counsel:    Well, you stayed it.  So we didn't do it.

The Court:    Sir, I'm telling you to do it.

Plaintiff's Counsel:    That's fine.  We'll do it.

*See* Transcript of Proceedings on July 1, 2014 (doc. #41), at 146-47.  While I plainly directed Ms. Witt's counsel to answer Defendant's outstanding discovery requests, my comments on July 1, 2014 could not be construed as waiving defense counsel's obligation to comply with my practice standards.

Defendant claims that notwithstanding Plaintiff's counsel's assurances on July 1, 2014, responsive documents had not been produced as of September 5, 2014.  Ms. Witt's counsel insists, in response, that the information sought in Defendant's requests for production is no longer relevant in light of his client's Notice of Waiver of her actual damage claim on July 30, 2014.  Without deciding the merits of Plaintiff's position, I will require counsel for the parties to engage in a meaningful, professional, and cooperative meet-and-confer pursuant to Fed. R. Civ. P. 37(a) and Local Rule 7.1A.  If those discussions are unproductive, counsel are instructed to contact my chambers to arrange a time for a telephone conference with me.  Only then, and with my permission, may GC Services move to compel and for sanctions.  Counsel for both sides

should not, however, return to the court unless they have undertaken, as officers of this court, reasonable and good-faith efforts to resolve any outstanding discovery disputes.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel the Defendant's Response to the Plaintiff's Written Discovery Requests (doc. #22) is granted in part and denied in part.  I will require Defendant GC Services to supplement its response to Interrogatory No. 8 as indicated above.  Plaintiff's motion is denied in all other respects.  The court will, however, exercise its discretion and not award either side fees and costs pursuant to Fed. R. Civ. P. 37(a)(5)(C).  I will, however, impose sanctions under Rule 26(g)(3) based upon my finding that defense counsel failed to comply with his certification obligations under Rule 26(g)(1)(B).  Defense counsel will be required, within two weeks of this Order, to pay Plaintiff's counsel the sum of $500 as partial reimbursement for the reasonable expenses, including attorney's fees,  incurred in preparing Ms. Witt's motion and for appearing for the hearing on July 1, 2014.  Defendant's Second Amended Motion to Compel Plaintiff's Discovery Responses & Motion for Sanctions (doc. #54) is denied without prejudice.  Defendant's September 4, 2014 Motion to Compel (doc. #50) was supplanted by Defendant's Amended Motion to Compel (doc. #54) and therefore is denied as moot.

DATED this 9th day of December, 2014.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge